UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NAIL A. HARRY,

    Plaintiff,

v.                                    Case No. 3:17cv328-MCR-CJK

M. NICHOLS, et al.,

    Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

This matter is before the court on the defendants Corizon Health, Inc., M. Nichols, and L. Brady's motion to dismiss the amended complaint (doc. 35) and plaintiff's response in opposition (doc. 37). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties' submissions, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part.

BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at the Hamilton Correctional Institution Annex. The amended complaint names four employees of Santa Rosa Correctional Institution ("SRCI") as

defendants: Nurse M. Nichols, Nurse L. Brady, Officer Beaver, and B Dorm Sergeant John Doe. (Doc. 9). Corizon Health, Inc. ("Corizon"), an entity contracted to provide healthcare services to inmates at SRCI, is named as the fifth defendant. The amended complaint sets forth the factual allegations that follow.

On November 27, 2012, plaintiff "received a pair of high top orthopedic sneakers for what ARNP T. Paten determined as significant deformities due to a leg length discrepancy." On August 20, 2014, Nurse Nichols examined plaintiff; plaintiff told Nichols "he would like her to file an orthopedic consult so that he could be seen by the orthopedic specialist, so that [plaintiff] could receive a pair of work boots." When Nichols asked plaintiff where his old boots were, he told her the boots were taken at Charlotte Correctional Institution. Nichols said plaintiff "was a liar and that she knows inmates sell their shoes." Plaintiff advised Nichols "he needed boots for restricted labor squad," but he was escorted back to his cell.

Later on August 20, Sergeant John Doe came to plaintiff's cell and stated "Officer Butler sent him to take [plaintiff's] orthopedic sneakers." Plaintiff resisted, indicating "he had a medical pass and a real medical need for the sneakers and heel lift because he lived upstairs and had balance issues walking up and down the stairs." The sergeant told plaintiff, "I don't care about your pass and if I have to come back I'm coming to gas your ass." Plaintiff gave the sergeant the sneakers and heel lift.

Plaintiff filed a formal grievance about these events. Dr. Schwartz and Assistant Warden Courtney responded, stating "the clinician had written a pass for [plaintiff] to possess the shoes and that the grievance was denied." Plaintiff appealed the denial of the grievance "because the shoes had never been returned." He also filed "an informal grievance about the fact that the record reflected the untrue statement that [plaintiff] had been given a pass and the shoes returned." The informal grievance was returned without action.

Plaintiff visited Nurse Nichols again. The nurse called plaintiff a liar and said "she can't stand liars and that [plaintiff's] medical shoes were in her office where they would remain." Plaintiff "wrote several informal and formal grievances about his shoes and heel lift to no avail" and "defendants played a game of keep away." In response to a grievance, a property sergeant told plaintiff "to take it up with medical[.]" When plaintiff "wrote a request attaching a copy of the grievance stating that the shoes and pass were issued the response was 'spoke with medical they stated will determine if they will be issued' on 9-12-14." On October 20, 2014, defendant Brady "wrote a falsified statement" in plaintiff's medical chart indicating plaintiff was given the shoes and heel lift.

After several weeks, plaintiff went to sick call for back and knee pain "due to . . . not having his medical shoes and heel lift[.]" Nurse Derrick saw plaintiff at 9:30 a.m., and at 12:30 "it was noted that [Derrick] spoke with defendant Beaver who

told [Derrick] the 'inmate has shoes in property." Plaintiff, however, asked Beaver if the "shoes and heel lift were in property"; Beaver replied on November 13 and stated, "you have to have a pass for medical boots from medical." On November 19, Beaver went to plaintiff's cell and "asked him if he still had the property slip from when he first came to [SRCI]." Plaintiff could not find the slip and Beaver left.

Plaintiff filed an informal grievance about the shoes on December 17, 2014, and the property sergeant responded that "property does not have your medical shoes." Plaintiff later apologized to Nurse Nichols in order to have the shoes returned. Plaintiff informed Nichols the loss of the orthopedic shoes caused back and knee pain, but Nichols refused to provide the shoes.

On December 23, 2014, an unknown prison employee approached plaintiff and stated "I hear you been giving the property room boys trouble. If you don't stop with the grievance shit you won't get off [close management.] So make a smart decision and eat your pen son." Plaintiff stopped filing grievances after the threat.

Based on the foregoing, plaintiff alleges defendants Nichols, Brady, Beaver, and John Doe 2 violated the Eighth Amendment by preventing plaintiff from using the orthopedic shoes and heel lift. He also alleges: (1) Nurse Nichols, Nurse Brady, and Corizon are liable for medical malpractice; and (2) Sergeant John Doe 2 is liable for assault. As relief, he seeks $15,000 in compensatory damages and $150,000 in punitive damages.

## LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994).  A few exceptions exist to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice.  5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008).  Further, only <u>well-pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  Mere "labels and conclusions" are not accepted as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or, "nudge[] the[] claim[] across the line from conceivable to plausible[.]" *Id.* at 570.

## DISCUSSION

Eighth Amendment

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration."). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious

medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* at 1307 (*quoting Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To show deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To support deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave

rise was insubstantial or nonexistent;" or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendants first argue plaintiff's leg-length discrepancy did not constitute a serious medical need. (Doc. 35, p. 6). Plaintiff, however, alleges Nurse Paten determined the discrepancy required treatment in the form of special shoes, which supports the existence of a serious medical need. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (noting a serious medical need is "one that has been diagnosed by a physician as mandating treatment").

In 2012 plaintiff filed a separate case in the Middle District of Florida concerning the denial of orthopedic boots. *See Harry v. Wagner*, No. 2:12cv643-Ftm-29UAM, 2014 WL 2091202 (M.D. Fla. May 19, 2014). That court determined plaintiff's allegations satisfied the objective component of an Eighth Amendment claim:

> Generally, other district courts addressing a leg length discrepancy have concluded that such a condition does *not* constitute an objectively serious medical need. *See, e.g.*, *Haverty v. Crosby*, No. 1:05-cv-133-MP-EMT, 2006 WL 839157, at *5 (N.D. Fla. Mar. 28, 2006) (3/4 of an inch disparity in the length of the plaintiff's legs did not rise to the level of a serious medical need); *Turner v. Solorzano*, No. 3:04-cv-632-J-32MMH, 2006 WL 2523410, at *3 (M.D. Fla. Aug. 30, 2006) (3/8 inch disparity in leg length was not objectively serous medical need); *Graham v. Aponte*, No. 1:08-cv-308, 2009 WL 249779, at *4 (E.D. Va. Feb. 2, 2009) ("[T]he discrepancy in the length of plaintiff's legs which requires a 3/8–inch lift in one shoe is not a sufficiently serious medical need or condition to satisfy the objective component of an Eighth Amendment claim."); *Shakur v. Furey*, No. 3:08-cv-1187 (VLB), 2010 WL 1416836, at *4 (D. Conn. Apr. 8, 2010)

> (plaintiff failed to show through case law or medical opinion that a 3/8-inch leg length difference constituted a serious medical need); *Dean v. Lantz*, No. 3:08cv0749, 2009 WL 2151173, at *4 (D. Conn. July 17, 2009) (leg length discrepancy not a serious medical condition).
>
> However, with the exception of *Haverty*, each of these cases was decided at the summary judgment stage, and the district court was presented with medical evidence regarding the plaintiff's condition. While a leg length disparity is clearly not always a serious medical need, the Court notes that Petitioner was treated for the discrepancy and was prescribed shoes for the condition. At this stage of the litigation, Plaintiff need only allege factual allegations that allow the Court to draw a reasonable inference that he suffered from a serious medical need. *See Iqbal*, 556 U.S. at 679. Based on this, the Court concludes that Plaintiff has alleged sufficient plausible facts to infer that he suffers from an objectively serious medical need. *See, e.g.*, *Bismark v. Lang*, Case No. 2:02-cv-556-FtM-29SPC, 2006 WL 1119189, at *15 (M.D. Fla. April 26, 2006) (recognizing that while the plaintiff's foot conditions of hammer toes and high arches were not the type of ailments that *always* constituted a serious medical condition, the plaintiff had sufficiently proven a serious medical condition in his particular situation).

*Id.* at *5. Based on the reasoning set forth in plaintiff's Middle District of Florida case, he has sufficiently alleged a serious medical need.

Defendants Nichols and Brady next claim the amended complaint's allegations do not show they exhibited deliberate indifference to plaintiff's condition. Nurse Nichols argues: (1) she "has no authority to give an inmate objects seized by security staff"; and (2) "[m]edical staff issues passes for items; security staff provides those items and can take them away." (Doc. 35, p. 7).

The amended complaint (and the exhibits attached thereto), however, do not suggest Nichols deferred to security regarding plaintiff's treatment.* On September 17, 2014, plaintiff submitted an inmate request in which he apologized to Nichols for a previous "slight" and asked for the return of the orthopedic shoes due to knee and back pain. (Doc. 9, p. 15). In response, Nichols wrote: "Noted. That was not a slight. It was a bold faced lie and you intentionally told it to me and many others." (*Id.*). Nichols also allegedly called plaintiff a liar and told him the shoes "were in her office where they would remain."

These allegations suggest Nichols may have restricted plaintiff's access to the orthopedic sneakers based not on her independent medical judgment, but because Nichols felt plaintiff lied to her concerning how he lost his boots. Viewed in a light most favorable to plaintiff, Nichols may have withheld the shoes with little purpose other than to torment plaintiff. Such a decision could constitute deliberate indifference. *See Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) ("knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Plaintiff, therefore, has stated an Eighth Amendment claim against Nurse Nichols.

---

* The FDOC's regulations do not indicate security staff can unilaterally alter an inmate's course of treatment. *See* Fla. Admin. Code r. 33-210.201(7)(a)2. ("If security staff denies a health care appliance to an inmate for safety or security reasons, the Chief of Security, or his or her designee, shall immediately consult with the Chief Health Officer, or his or her designee, to determine necessary action to accommodate the inmate's needs.").

Case No. 3:17cv328-MCR-CJK

With respect to Nurse Brady, plaintiff alleges Brady falsely wrote in a medical chart that plaintiff received shoes and a heel lift on October 20, 2014.  (Doc. 9, p. 9). Plaintiff explains that Brady's false entry "was a collusive action to help Nichols continue to interfere" with plaintiff's prescribed treatment.  (Doc. 37, p. 2).  Nurse Brady, however, argues "[w]hat she wrote in the medical chart, whether correct or incorrect, is not a constitutional violation."  (Doc. 35, p. 7).

Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Nurse Brady.  If Brady falsely wrote that plaintiff had been given the orthopedic shoes, one could infer Brady did so to intentionally prevent plaintiff from receiving the shoes.  Plaintiff, therefore, should be allowed to develop the Eighth Amendment claim against Nurse Brady through discovery.

Medical Malpractice

Defendants argue plaintiff's medical malpractice claim should be dismissed because he failed to comply with the pre-suit notice requirements of Fla. Stat. § 766.106.  The medical malpractice claim, however, fails for a different reason.

A "'[c]laim for medical negligence' or 'claim for medical malpractice' means a claim, arising out of the rendering of, or the failure to render, medical care or services."  Fla. Stat. § 766.106(1)(a); *see also* Fla. Stat. § 95.11(4)(b) ("An 'action for medical malpractice' is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any

medical, dental, or surgical diagnosis, treatment, or care by any provider of health care."); *Silva v. Sw. Fla. Blood Bank, Inc.*, 601 So. 2d 1184, 1187 (Fla. 1992) (Diagnosis, treatment, or care "mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness."). Although Nurses Nichols and Brady may have been responsible for plaintiff's medical care, "not every alleged wrongful act by a healthcare provider, or its employee, amounts to medical malpractice." *Reeves v. N. Broward Hosp. Dist.*, 821 So. 2d 319, 322 (Fla. 4th DCA 2002)

Here, plaintiff claims Nichols and Brady intentionally deprived him of orthopedic sneakers to punish him. Because plaintiff does not allege the nurses' actions were based on professional judgment or skill, he cannot bring a medical malpractice claim. *See Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. 3d DCA 2006) ("To be a malpractice claim, a wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill.") (citation omitted). The medical malpractice claims, therefore, should be dismissed against defendants Corizon, Nichols, and Brady. *See Stackhouse v. Emerson*, 611 So. 2d 1365, 1366 (Fla. 5th DCA 1993) (holding man did not allege medical malpractice but instead "independent intentional acts" when

he sought treatment for alcoholism and claimed hospital refused to release him and forced medical treatment upon him).

Accordingly, it is ORDERED:

1.     The clerk shall update plaintiff's address to Hamilton Correctional Institution Annex, 10650 SW 46th Street, Jasper, Florida 32052, and mail a copy of this Report and Recommendation to him at that address.

And it is respectfully RECOMMENDED:

1.     That defendants' motion to dismiss the amended complaint (doc. 35) be GRANTED IN PART and DENIED IN PART.

2.     That plaintiff's medical malpractice claim against defendants Corizon, Nichols, and Brady be DISMISSED.

3.     That this matter be referred to the undersigned for further proceedings on plaintiff's Eighth Amendment claim against defendants Nichols and Brady.

At Pensacola, Florida, this 22nd day of August, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.